All rise. Please be seated. All right, the next case on the docket, Fuller-Moutell v. Quamen. Please proceed, Counsel. Thank you, Your Honor. Mr. Schmidt, may it please the Court. Good morning. Good morning. The appeal was taken, there was multiple counts filed against two different defendants. The appeal was taken with regard to a malicious prosecution count against the defendant Quamen, as well as an abuse of process count, and that's why we're up here. I'm going to be focusing my remarks on the malicious prosecution count, because, frankly, I think that's our strongest argument. My client was arrested for disorderly conduct. And the case of People v. Cooper, as well as the Fabiano case, which was cited in the brief, do indicate that for a disorderly conduct charge to be brought, the conduct of the criminal defendant, the plaintiff in this case, must be judged in light of the surrounding circumstances that the parties find themselves in. And here's what the facts are. We're here on motion for summary judgment, and so the following facts, I believe, on a motion for summary judgment standard must be taken as true. Both plaintiffs and defendants are SIU employees. On August 16, 2012, my client, Fuller, had just returned from her lunch walk and found an e-mail on her desk that had been sent from her coworker, Eplin, to the defendant Quamen. Quamen is my client's supervisor. She also was Eplin's supervisor at the time. The e-mail indicated that my client was involved in many activities, but I think the most outrageous statement in there is that my client had been spending an enormous amount of time in the inside of the delivery truck of the UPS driver. And she responded. She was upset about that and felt it was necessary for her to leave the office. The reason that the e-mail was placed there is because Mr. Eplin had concluded that somebody was hacking his computer and my client was the prime suspect, and this e-mail is just a concoction to elicit a response. In fact, hadn't the police, a police officer, suggested that the e-mail be created to kind of snare? I think that's a correct statement, Your Honor. There's no question that Detective Eberhard had been contacted before, and this was something that either she suggested or went along with. So the three of them were involved in the situation. But what's very important to understand in this case, Your Honor, is that my client was not arrested on August 16, 2012, for computer tampering. She was arrested for disorderly conduct. So my client, she leaves her office and she goes down to a stairwell, and there she meets the defendant, Quammen, also in the stairwell. I don't think there's any dispute that this meeting was by chance, not by design. Quammen, her office is in a different building, so she's coming over to Lindgren Hall from her office in a different building, and there's this chance meeting. Now, the trial judge, in her written opinion, as to all accounts, indicated, made a finding that there was a confrontation. That's the trial judge's words in her order of reading the summary judgment. Now, in her deposition, Quammen indicated that, and when the question was asked by me, well, was there a confrontation between you and my client, she specifically denied that there was a confrontation. She used the word interaction. And then also in her affidavit in support of the motion for summary judgment, she declines to use the word confrontation. She uses the word interaction. And in her deposition, and it's also in the record, that there was a frosty relationship between my client and Quammen before. There had been incidents before. And Quammen testified in her deposition that in this particular circumstance, she was surprised at how calm my client was and how controlled, that was her word, controlled she was in the circumstances. Is that relative, though, to, I guess, what she was in other situations that they interacted with? That's correct, Your Honor. And I asked her in her deposition, I said, well, did you give any consideration in the prior interactions, the prior incidents, to calling the police and having my client arrested for disorderly conduct? And the answer was no. So on a comparative basis, this was a very controlled, calm circumstance. And the argument is made in the record that Ms. Quammen felt threatened was the phrase that she used. She was visibly upset. And I'm going to get to that in a moment. But the simple fact of the circumstances is that Quammen testified in her deposition that she asked my client approximately 15 times in this interaction in the stairwell how it was that she learned that, I'm going to use the word, slanderous, libelous statements were being made about her. So whatever level of upset or emotional state she was in, she was certainly controlled enough to pepper my client with questions and asking, how did you find out these circumstances? How did you find out these circumstances? Now, Debbie Simpson was also an employee that observed my client sometime after the event in the stairwell. And she testified, evidence deposition, that my client didn't use any curse words. There was nothing unusual about her behavior. She was calm. There was nothing about my client's behavior that would have caused Debbie Simpson to call the police. The suggestion is also being made in the record, I believe, that the police were called because of the interaction in the stairwell. That's not true. Quammen testified that it had already been agreed if there had been some kind of circumstances that occurred that the police were to be called. And that's why Quammen called the police as she testified in her deposition. Now, also in her deposition, Quammen admits, number one, my client never touched her. My client never blocked her egress from the situation. Quammen nowhere in this record points to any language that my client used to support her contention that she felt like she was threatened. My client testified that she used no threatening language whatsoever. So here we have a situation where at best you can say that an argument ensued between these parties. Now, why did the argument ensue? Because the record will indicate that subsequently my client's computer, the drive was taken, diagnostics were performed on it. There's no evidence under any circumstances, at least that I can see in this record, that my client was guilty of computer tampering and those charges were dismissed. So here we have a suspicion by Epplin and Quammen that my client is hacking Epplin's computer, a charge which I think is very dubious under the circumstances, because Epplin already had his computer checked to see if somebody had been hacking it. He was frequently changing his password. There's no evidence that my client had any kind of computer sophistication where she could hack into a computer with that level of expertise. And then subsequently it's found that there was insufficient evidence to bring those charges. So here we have a situation that I think was concocted by the parties that was designed, designed to bring out an emotional response from my client. That was the whole purpose of this whole scheme. And so here we have an emotionally charged circumstances and we have Quammen saying she was surprised at how calm and controlled my client was. She's peppering my client with questions about how she found out about these circumstances. There's no threatening language used. She's not touched. Her ability to remove herself from the circumstances is not blocked. So I ask the question, under the standard, in light of the circumstances, was my client's conduct reasonable? And all we have here is at best an argument. And let me submit to you that I have researched this case. And if we have a rule that is established that somebody subjectively feels threatened, in other words, the question is, if you're going to bring a charge for disorderly conduct, the question is, what would a person of ordinary care and prudence do? Now, if you have an argument, no threatening words have been used, you haven't been touched, your ability to remove yourself from the argument is not being blocked. In other words, if you're not in a small room, my client's blocking the door. Are we in a situation where because you subjectively feel threatened, that you can bring a charge for disorderly conduct? And I think the answer is no. You shouldn't be allowed to bring a charge for disorderly conduct. Obviously, the charges were dismissed, as they should have been. But then the question is, well, did you have probable cause, as a person of ordinary care and prudence, to charge somebody with disorderly conduct because you feel upset because of an argument between the parties? If that becomes the law, if that's the situation where there will be no sanction that will inure for that conduct, then I suggest that the scope of the disorderly conduct charges can be brought, will expand significantly. Now, in this case, there's no dispute that there isn't any other evidence with regard to what actually occurred in that stairwell that brought the charges. Detective Eberhard, who the court has already mentioned, indicated in her deposition that it was based solely on the information supplied by Quammen, and basically the decision was made to Quammen whether she was going to have my client arrested. Now, there's a dispute between the parties about why was Quammen upset. My client filed an affidavit, basically said when she first encountered Quammen in the stairwell, she was already upset. And that affidavit is challenged because they claim this is contrary to deposition testimony. I spent a great deal of time in the reply brief indicating that it's not contrary to deposition testimony at all because the question of when Quammen was upset was never asked during her deposition. But it also makes sense that Quammen would be somewhat upset under those circumstances because she's gotten a call from Applin. Applin has reported to me, oh, we caught her, and Quammen is immediately coming over to Lindgren Hall because of these concerns about the computer tampering. It makes sense that she would be in an agitated state of mind when she enters the stairwell. And so I think under a summary judgment standard, it's clear that a jury could find that whatever happened in that stairwell was not that it caused Quammen to be upset, was not a result of anything that my client did. So I think this is an important case in terms of policy. I believe that Illinois law should not permit somebody where there's a test that can be said there's an argument between the parties. And because the argument is upsetting, that's even disputed as the cause of her being upset. But even here, because there's an argument between the parties, and one of the parties is upset, the other one can have that person arrested for disorderly conduct. Now, true, the charges were dismissed. And counsel, I'm just looking, refreshing my recollection on how those charges were dismissed. Yes, was it at the request of the alleged victim? No. My client, my belief, but I can't cite to the record, is that there was basically a ticket was issued. She was required to appear over in Jackson County. She appeared in Jackson County and learned that the charges had been dismissed, but it was not at the instigation of Quammen. So the state's attorney prosecutor dismissed it. Correct, Your Honor. And what is the complaint that Quammen signed for disorderly conduct? Is that in the appendix? I'm not sure, Your Honor. I can check. Well, I have... It was just a ticket, as I recall, Your Honor. It's kind of like, you know, a traffic ticket or something like that. A notice to appear. Huh? It's a notice to appear. Exactly, Your Honor. And I forget who signed it. But didn't Quammen sign the complaint herself? I'm not sure that there's any written evidence in the record where Quammen signed anything. She just made statements to the officer that appeared. Exactly. I think that's what happened, but then the officer testified that the policy, her policy and the officer's policy, is that whenever any person at SIU wants to have somebody arrested for disorderly conduct because they feel like it's warranted, they go ahead and effect the arrest. So this was solely a decision by Quammen. And if you look at the exchange and the deposition where Eberhard is there, Quammen is there, and Eplin is there, it's all about trying to convince Eplin kind of ways in as to whether Quammen should have Fuller arrested. Well, now let's back up a little bit.  Well... Correct? There was, because... Because there was a complaint and a warrant? My client was forced to go over to the... No, I don't care about that. I'm worried about was there an arrest? I don't know, Your Honor. See, with a notice to appear, there's no arrest. Well... Unless you don't appear, and then a warrant would issue for your failure to appear. So I think that's the way it goes. Let me answer the question this way, Your Honor. I don't think there's any dispute that my client was taken over to the SIU, what I'll call the SIU police building. Okay, now, when you get a notice to appear, the notice says you appeared on a certain date at a certain place. Correct. So your client wasn't taken over. Your client went over there based on that notice to appear. I think, Your Honor, what happened in this case is like last month. I was polled over, I was given a citation, I was given a notice to appear. I was allowed to go on about my business. This situation is different, because my client was taken over to the SIU building. Did she ask to postpone? I believe she did, if I'm not mistaken. So she was arrested. My question is, how was she arrested? You're asking me questions. I'm a little bit concerned about what I know for sure. I don't know whether she postponed or not. My tentative answer is I think she did, but I'm not absolutely positive of that. What I do know for sure is that she was taken, against her will, over to the SIU. So she went in a squad car or something like that? She went in a squad car. I don't know how she got there. Excuse me, I'm looking at A175 in the court's order, and it says that there is no evidence that the complaint for disorderly conduct was signed by Qualman for any purpose other than the incident between Qualman and plaintiff in the stairway. So that just presumes that there was a signature, I think. I'm not sure. Would that be in the record, you think? Yes, I'm sure it's in there. The ticket's in the record. We'll find it. And I'll find it while Mr. Smith is talking. Thank you, Your Honors. Thank you. Argument for the appellee. Please, the court. Your Honor, I represent Debbie Qualman in this matter. Let me at the outset just comment upon where I think the issues are in this case. There was a 10-count, third-name complaint filed, and as we are here today, I believe there's two counts of issue. The one count of issue is count 7, which was the malicious prosecution based on a disorderly conduct charge, which the trial court granted summary judgment. The second issue that I believe is before the court is count 8, which is the abusive process based upon the disorderly conduct charge against Ms. Qualman. I believe those are the only two issues currently before the court. Now, let me, if I may, comment on some of the facts that the court has already alluded to. And let me focus on the disorderly conduct issue and the malicious prosecution issue. The court granted summary judgment on that part of the case. As we know, summary judgment is granted where there is no dispute as to any material facts. I heard a recitation of facts by counsel, and there were some facts recited in there which I don't think are pertinent to the real focus of where we should be looking here today. And I would also add that some of the facts he referenced are actually disputed. Let me talk about the facts that are not disputed that I think are relevant to the issue of disorderly conduct in this case. Fact number one, which is not disputed, there was an interaction or a confrontation, I don't care which term you use, but there was some sort of interaction or confrontation that occurred at Lindgren Hall on the SIU campus. That's not disputed. Point number two, the reason my client is there at that particular time is because she got a phone call summoning her to come over. The sting that had been set up with the assistance of the SIU Police Department had apparently had its desired effect and triggered a reaction by Ms. Fuller Mattel. And Debbie Qualman was summoned to come over there to talk to Mr. Epling about what had occurred. That's why she was there. That's not in dispute. Third fact that's not in dispute is Debbie Qualman felt threatened. Now, we can debate about whether her fear was reasonable or not, but her testimony, the affidavit, and the observations of others that saw her were in agreement. She felt threatened. Next point. In the course of this interaction or confrontation, Debbie Qualman sought to retreat from the situation and get away from it. She retreated down a hallway and found refuge in the office of Sarah Meredith. That's not in dispute. The next point that's pertinent is while she was in Sarah Meredith's office, she did in fact place a telephone call to the SIU Police. My counsel would have you to believe that this was a planned phone call and she was going to do it anyway, which is partially true. But the timing is significant. She did it in a closed office when she was pregnant. She talked in a whispered voice to the police officer and said, can you please come now? That's not in dispute. The next thing that's not in dispute is when Officer Eberhardt, actually there were at least two or three officers that arrived, but Officer Eberhardt is the one that prepared the documentation. When Officer Eberhardt arrived, she observed that Debbie Qualman was shaking and she was visibly upset. And then the next fact that's not in dispute is in the course of the investigation, Officer Eberhardt offered Debbie Qualman the opportunity to file a complaint for disorderly conduct. It wasn't Debbie Qualman's idea. The officer offered that opportunity to her. Now the court asked about the ticket that was issued. I believe you'll find it on page E559 of the record. And it is simply a ticket for disorderly conduct with a direction to appear and a date certain. So it's a notice to appear, not a complaint? It's a notice to appear? It's a disorderly conduct. That's the document. That's a notice to appear, isn't it? Yes. It's exactly what it is. Counsel, do you have the... Is it in the appendix? I don't know if it's in the appendix, Your Honor. I don't know. I have not seen it. Page E559. Okay, and we don't have that. We've just got... What we've got with us right now is the appendix. I understand A, whatever, so it would be a different thing. Well, look, I apologize. I don't know if it's in there or not. And who signed that document, Counsel? It was signed by... It was signed by Debbie Palmer. She did sign it. And what it says is disorderly conduct, and by the way, this was filled out by the officer, Everhart, in that the above Diana Fuller Mattel approached the complainant and raised her voice. Fuller Mattel was verbally harassed, the complainant, and caused her to fear for her safety. Fuller Mattel acted in an unreasonable manner as to the above, and the complainant, and provoked a breach of the peace. And then it was signed by Debbie Palmer. So that's what the structure is. You know, in reading the court's order, which is very thorough, her focus is not so much on what happened, it is rather there has to be the legal basis for both the malicious prosecution and abusive process, and that has to be a showing that actually both of them were commenced with a purpose apart from what occurred, and a purpose to the commission of the crime of the alleged disorderly, but the purpose of injury, such as some nefarious additional reason that she had to prosecute, have her prosecuted. And the court cites law, and then when talking about the abusive process, she also states it must plead facts that the proceeding was initiated for a proper purpose such as extortion, intimidation, or embarrassment. So I guess I'm wondering about that focus versus actually what happened at the time. Very good, Judge. I think the point's well taken. Let me move on and address those points. Let me talk first about the malicious prosecution and then talk about the abusive process. In order to sustain a claim for malicious prosecution, there are really two points that I think are important in the analysis. The first part is the determination of whether or not malicious prosecution can be pursued is going to be based upon both a factual and a legal determination. Obviously the factual issue is are there a collection of facts that give a prima facie basis of probable cause. That's the first threshold question. I believe this record pretty clearly establishes that. Then the second thing is there's a question of law which the court determines as to whether or not probable cause exists based on those facts. And the trial court in this instance determined that, yes, there was a collection of facts that warranted it, and second, there was a legal basis for reaching a conclusion that there was probable cause on the part of Debbie Quammen to make this complaint of disorderly conduct. Now that's the first part of the analysis. The second part of the analysis is I think the part that the trial court was focused on, and that is this. In determining whether or not Debbie Quammen acted reasonably in filing and signing this complaint for disorderly conduct, you have to judge it from the state of mind of Debbie Quammen. And there's an abundance of case law that so states. Indeed, a case cited by plaintiff's counsel, the Fabiano case, specifically states that probable cause is a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. The existence of probable cause is a mixed question of fact, but if true, whether those circumstances amount to probable cause is a question of law to be signed by the court. That's the first part. The second part in the Johnson v. Target stores case noted, and this is important, it is the state of mind of the one commencing the prosecution and not the actual facts of the case or the guilt or innocence of the accused that is at issue. It is the state of mind of Debbie Quammen in signing that ticket and not the actual facts. And it's not the guilt or innocence of his store or motel. Whether she's guilty or innocent doesn't matter. It's the state of mind of the complaining party. And then there must additionally be malice, even if they could prove probable cause. Absolutely. Those are the two components that are in dispute in this case, probable cause and malice. Now, the malice issue, think about this for just a second. To suggest malice implies that there has been a course of view and a course of conduct that there's a desire to do something to get at this person. In this situation, this event occurs. It's not Debbie Quammen's idea to file this complaint. No, it's not her idea. The police officer, Eberhardt, asks her, do you want to sign a complaint for disorderly conduct? She brings it up. Now, if this were done maliciously, by design, with an intent to get even, wouldn't it have been Debbie Quammen that would have said, I want to file a disorderly charge against Ms. Fuller Motel? That's not what happened. It was the officer that brought it up. So based on this record, based on these facts, the plaintiff has not established a prime case of either probable cause, absence of probable cause, or affirmatively shown malice. It's just not there. The other issue in this case is the abuse of process issue. This is not an abuse of process case. It just isn't. The example of abuse of process that I like to cite is this. An attorney is handling a personal injury case. He wants to question a witness that's not cooperating and show up. So the attorney issues a subpoena, a notice of deposition, and serves it on this witness to come to his office on a day certain to give a deposition. The attorney does not notify a closing counsel, does not file these documents. He just does it. The witness shows up at his office one day, and he says, fine, we're going to take a sworn statement from you. The court reporter's here. He does a Q&A statement, ex parte, and after it's done, he sends it to his opponent. That's an abuse of process. The lawyer is using the subpoena powers that he is granted by the judicial system to compel the appearance of a witness, and then he's not notifying the other party, which is obviously a violation of the rules. That's an abuse of process. You're using the judicial process for a malicious purpose to gain an advantage over your opponent. That's not this case. Debbie Baumann's only involvement in this entire scenario, her only involvement, was she signed the ticket. That's all she did. After this happened, she didn't know what followed. She did not know. What, in fact, followed is the SIU police did an investigation. Detective Eberhardt prepared a lengthy affidavit for probable cause, which is in the court's file, page E557, explaining why it was probable cause. The matter was investigated, and then it was turned over to the state's attorney. Now, for reasons that none of us know, the state's attorney chose to file charges for computer tampering rather than disorderly conduct. All that was done without any knowledge or involvement on the part of Debbie Baumann. And then once those charges were filed, Ms. Fuller would tell the sum to appear, and at some point the charges, the computer tampering charges, were dropped. Again, all of this without any knowledge or involvement on the part of Debbie Baumann. So, a series of events occurred, which were triggered by the affidavit for probable cause and the investigation by the SIU police. Debbie Baumann's sole involvement was she signed the ticket the day this happened. And this ticket is based solely on what occurred in the hallway of Lindgren Hall. What happened with the computer tampering issues is not relevant. It's not a part of this case. Your Honor, it's based on the evidence. Counsel, let me ask you a question before we wrap it up. On the malicious prosecution, going back to that, you made reference that the citation, the complaint was actually written by Detective Eberhart. Correct. Is that in the record? We've had some facts thrown around here in argument, and I'm just wondering what's in our record that that fact is in the record. I believe you will find that in Dr. Eberhart's deposition testimony. I believe that's where you'll find it. And you can, it's printed, it's printed. And at that time, the officers served this citation on the complaint. Correct. Same day. So one could argue that, well, the officers thought there was probable cause as well for the issue of the citation. Based on the statement made by the client. Judge, let me, if I may, the affidavit for probable cause, which was completed by Detective Eberhart, she says, and I'm quoting, Quammen said she felt cornered by Fuller Mattel and needed to get somewhere safe away from her. She said Fuller Mattel has had other outbursts in the office and she is normally verbally aggressive and confrontational. She said she was shaking and her heart was racing during this conversation. She said she kept backing up and Fuller Mattel kept coming toward her. She said she made it to the first floor and went into room 132 where she called the affidavit. And then this is completed by the officer. And this affidavit is submitted for the purpose of a probable cause determination together with the complaint against Diana Fuller Mattel. This is the officer that completed this. And the officer signed this and this is what was submitted to the state's attorney's office. So, yes, the investigating officer made her determination of probable cause as well. And if I might also direct the court's attention to the testimony of Officer Eberhart, page 51 of the deposition. Question. Now, the decision to arrest Diana Fuller Mattel for disorderly conduct, let me ask you a couple things about that. You indicated in response to questions by counsel that Debbie Quammen was given the opportunity to sign a complaint and based on her signature on that complaint, that was a factor in making the arrest, correct? However, independent of that signed complaint, you observed Debbie Quammen in a very upset state when you arrived, correct? Question. And you heard her on the telephone when you received that phone call whispering and saying she was going into a different room to hide. Answer. Exactly. Question. And those were additional factors that contributed to your impression that there was a reasonable basis for her to sign this complaint. Answer. Correct. Question. Based on disorderly conduct. Answer. Correct. It was all those facts put together with her signature. Correct. Question. So you had essentially corroborated information to support the decision to offer her the opportunity to sign a complaint. Answer. Absolutely, yes, Detective Eberhart. Based on this record, I believe the trial court correctly determined that there was probable cause for Debbie Quammen to sign a complaint for disorderly conduct. Thank you. Rebuttal? Yes. I believe the counsel misstates the law with regard to probable cause. Note that the ultimate question as to whether there was probable cause is a decision for the jury. In my inquiry, I make the following argument. In order to be entitled to summary judgment based on the existence of probable cause, defendants have had the initial burden of producing evidence that would have clearly entitled them to a finding that probable cause existed as a matter of law. That's the legal question. The trial judge can look at the surrounding circumstances and decide whether the initial burden of probable cause has been met by Quammen in this case. But then it goes on to say, and I'm citing the court case in my reply brief, whether a statement bears sufficient indicia of reliability to support a finding of probable cause in a malicious prosecution case is a question of fact to be resolved by the jury. That's the Kincaid case. And that's how the dynamics are to be resolved on a motion for summary judgment. Now, Mr. Schmidt reads from the affidavit of probable cause by Eberhardt. There's no dispute that Eberhardt wasn't there. And I suppose, for purposes of summary judgment, there's no dispute that Quammen was visibly upset. There is a dispute as to the cause of why she was upset, whether it was the call from Eplin or the interaction in the stairwell. I absolutely, and Mr. Schmidt said, there's no dispute that there was a confrontation. There's a huge dispute whether there's a confrontation. There's always been a dispute whether there's a confrontation. When Quammen was asked, was there a confrontation, the answer was no. And so there's a huge dispute. In fact, there's no evidence in this record that could support a finding that there was a confrontation. There never was. Okay, Mr. Dunham, let's presume that the plaintiff could prove probable cause. How has there been any showing of malice, which is the second requirement under the malicious prosecution? Your Honor, in the case of, I cited in my brief, hold on one second. That's okay. There's a case I cited in my brief where the court finds, here's what I state in my brief. Whether a statement bears sufficient indicia of reliability to support a probable cause in a malicious prosecution is a question of fact to be resolved by the jury. And then I cite case law in my brief, Your Honor, which I cannot find for the moment, that basically says if there is a finding of lack of probable cause, then that would permit the judge to provide an inference of malice. There's no dispute in this case, Your Honor, that there was a lot of interactions between my client and Quammen where a jury could find that there was that indicia of malice between them that preexisted in this. I think if you look at the record as a whole, there was no evidence that my client was engaged in any kind of computer tampering, yet she decided to go along with this scheme, essentially to set my client up. And it's cited in my brief, I just can't find it, Your Honor, but there is case law that supports that position. If I could, I would like to go to the disorderly conduct complaint. It's found in R-528, my version of it, in the record. It is signed by Quammen. It's not under oath. I don't think that we find out from Everhart's deposition whose writing it is. But here's what the statement is that was signed by Quammen. In that above, Debbie Diana Fuller Motel approached the complaint and raised her voice. Number one, there's no word that passed in the record that would support the suggestion that Quammen was just kind of standing there and my client approached her. It's a chance encounter in the stairwell. You cannot make a fine judgment that that's the case. Thank you, Counselor. The other statements are not backed up by facts. Thank you for your argument. We will take this case under advisement and issue a ruling in due course. We're running ahead of schedule. Let me ask the clerk, when the attorneys check in for the 11 o'clock, to let us know. We may start early. All right. Thank you very much. Court will be in recess. All rise.